JOHNSON, Judge.
This is an interlocutory appeal from the Criminal Court of Record for Duval County, seeking a reversal of the order of the trial court suppressing a confession of the defendant-appellee.
From the facts briefly stated, it appears that the appellee found the dead nude body of a Negro female in a tool shed behind a high school in Jacksonville. He reported this finding to the police department. The appellee, at the date he found the body, was employed at this high school doing maintenance and painting. The deceased’s clothes had some paint on them of the same kind as being used on school buildings that were being painted. This body was found and reported to the police on August 2, 1972. Sometime after that, an uncle of the appellee advised the police about some scratches on the back of appel-lee. The date this occurred is not shown nor the circumstances under which the uncle so advised the police. On August 7, 1972, the police were apparently still interested in the homicide, -and armed with the further circumstances procured from the uncle, they picked up the appellee from the school grounds and took him down to the Homicide Division of the Sheriff’s Office about 9:30 to 10:00 a. m.
In the trial court’s order, he relates what he found to be the facts which surround the actions of the police and the appellee from 10:00 a. m. until approximately 8:30 p. m. at the office to which the appellee had been taken. It is undisputed that shortly upon arriving at the Sheriff’s Office, the officers advised the appellee-de-fendant of his constitutional rights under the Miranda decision and the defendant actually signed a card setting forth his constitutional rights. Intermittently from 10:00 a. m. until the statement was made *468 by the defendant, at about 8:30 p. m., which is the subject of this appeal, one officer at a time, but not always the same one, would ask questions of the defendant, which, of course, were routine but leading directly or indirectly to the defendant’s actions in connection with the death of the deceased. A polygraph test was given and the operator reported his findings to the officers. There is no showing nor any claim made that the officers attempted to exert any physical force upon the defendant, nor was he subjected to any unusual or unreasonable stress. He was free to walk around. He was brought some crackers to eat and a coke to drirnk. And, the officers didn’t tell the defendant he could leave or not to leave. We think we should consider this in the light most favorable to the defendant, that he was actually in the police custody. About 8:30 p. m. the defendant made his statement which was a conf ession of his killing.
To this Court, it appears that the officers were very easy in their treatment of the defendant. They tried to give the defendant plenty of time to make up his mind. There is no doubt in our minds from reading the record, that the actions of the officers were no more than their constitutional rights as police officers to run down reasonable leads to solve a crime. If the officers had slapped the defendant around a few times, they probably could have obtained a confession in a much shorter time, but this they did not do, but followed the legal and right method to reach the same result.
The police and the law enforcement bodies must be granted some leeway in trying to solve crimes. The criminal element should not at all times be given all the technical advantages at the expense of the law enforcement, if such advantages do not curtail or encroach upon the constitutional rights of the defendant when viewed in the manner in which a reasonable man would review the same.
For the reasons stated above, we think and so hold, that the trial court abused its discretion in suppressing the confession and that the evidence did not support the finding of the court that the confession was not freely and voluntarily given. The order suppressing the confession is reversed and the case' remanded for a trial.
SPECTOR, J., specially concurs.
RAWLS, C. J., dissents.